UNION PACIFIC RAILROAD COMPANY, a corporation, Plaintiff,

v.

CORNELI SEED COMPANY, Inc., a corporation, Defendant.

No. 3148.

United States District Court
D. Idaho, S. D.
April 11, 1958.

---

L. H. Anderson, Pocatello, Idaho, for plaintiff.

Ralph R. Breshears, Boise, Idaho, Greensfelder, Hemker & Wiese, St. Louis, Mo., for defendant.

FRED M. TAYLOR, District Judge.

This action was commenced January 19, 1955, by the plaintiff, Union Pacific Railroad Company, a Utah corporation, to recover the sum of $3,433.50, with interest from July 2, 1953. There is no dispute that $127.74 of this amount is due and owning the plaintiff. The remaining sum of $3,315.76 was paid to the defendant, Corneli Seed Co., Inc., an Idaho corporation, by the plaintiff upon claims made by the defendant for alleged overcharges made on nine carloads of beans, peas, and shelled corn shipped from Twin Falls, Idaho.

Since proceedings were being instituted by the defendant before the Interstate Commerce Commission to determine the applicability of the tariff provisions upon which the instant action is based as applied to 14 shipments (of which the nine shipments here involved were a part), it was stipulated that the defendant's time to answer would be extended until 20 days after the decision of the Interstate Commerce Commission was rendered. The Interstate Commerce Commission made its decision and thereafter the defendant answered. The matter has now been submitted to the Court on an agreed Statement of Facts.

From the agreed Statement of Facts it appears that the nine carloads of beans, peas, and corn were shipped from points of origin in California, Oregon, and Washington, to a transit station at Twin Falls, Idaho, where the seeds were stopped for processing. After processing the seeds were shipped on to their final destination.

It is stated in the agreed Statement of Facts that:

"That the rules and regulations of the transit tariff of the plaintiff applicable to the shipments involved herein provided that when shipments are forwarded from the transit station, in this case Twin Falls, Idaho, unexpired inbound freight bills which had been recorded, or tonnage credit slips must be surrendered and cancelled; that the outbound bills of lading or shipping orders must have inserted thereon the weight, point of origin, and date of each inbound shipment covering the commodities forwarded and that the transit rate would not apply if shippers fail or decline to comply with all such rules and regulations; * * *."

The defendant had complied with the tariff rules and regulations, set out in substance above, for several years during and subsequent to 1944, and received the benefit of the transit or single-factor rate. By use of the information contained on the outbound bill of lading the defendant's customers began dealing directly with the defendant's sources of supply with a resultant loss of business to the defendant. To stop this loss the defendant's local representative adopted the practice of making shipments out of the transit point (Twin Falls) by using the regular forms of bills of lading used for shipments not entitled to transit privileges. These bills of lading did not show the information previously shown in compliance with the transit tariff rules and regulations. Then to secure the transit rate the defendant's representative filed with the plaintiff overcharge claims, attaching thereto copies of the bill of lading for the outbound shipment, a memorandum bill marked "for transit consideration only", which contained inbound references, and a statement showing a computation of the difference betwen the transit rate and the

combination rate. Pursuant to this practice claims were paid by the plaintiff, through and including the claims made on the nine shipments for which the plaintiff seeks recovery. Thereafter the practice was stopped and the instant action commenced to recover the amounts paid to defendant on its claims for alleged overcharges on the nine shipments here in question.

In its report and order dismissing the defendant's complaint the Interstate Commerce Commission found, in effect, that the procedure followed by the defendant was not in compliance with the tariff rules and regulations relating to transit privileges; that the procedure specified by the tariff rules and regulations had to be observed before the defendant was entitled to transit privileges. It was found in the said report that, "It is proper and reasonable to make compliance with this rule a condition precedent to the application of the single-factor rate."

■■ Duly filed tariffs bind both carrier and shipper with the force of law. Lowden v. Simonds-Shields-Lonsdale Grain Co., 306 U.S. 516, 59 S.Ct. 612, 83 L.Ed. 953. The shipper is conclusively presumed to know the proper tariff rates. Pettibone v. Richardson, 7 Cir., 126 F.2d 969. No estoppel can arise against the carrier nor can a waiver be made by the carrier to prevent the collection of the applicable tariff rate; and law requires the railroad to charge and collect the applicable rates. Davis v. Henderson, 266 U.S. 92, 45 S.Ct. 24, 69 L.Ed. 182; Pittsburgh, C., C. & St. L. R. Co. v. Fink, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151; West Coast Products Corp. v. Southern Pacific Co., 9 Cir., 226 F.2d 830.

■ These matters of law do not appear to be contested by the parties. It is apparently the contention of the defendant that the procedure followed in regard to the shipping of the nine carloads of seed was such a substantial compliance with the tariff rules and regulations here involved as to entitle the defendant to the single-factor or transit rate; and that the Court can determine this question as a matter of law.

Assuming, without deciding, that this Court is not bound by the Interstate Commerce Commission's determination, nevertheless, this Court is in agreement.

· In Chicago & N. W. R. Co. v. Connor Lumber & Land Co., 7 Cir., 212 F.2d 712, 717, it is stated:

"It appears that, as to all inbound shipments involved herein, defendant originally desired to and did avail itself of the transit rates plan set up by the aforesaid tariff. It thereby became obligated, in order to obtain the concession of such lower through rates to comply with every pertinent provision of the tariff imposing duties upon it as a shipper."

The Interstate Commerce Commission has held that the tariff rules and regulations here involved to be reasonable and proper. The language of the said tariff rules and regulations is specific and mandatory as to what must be done by the shipper in order to secure the single-factor or transit rate. These things were not done by the defendant.

It appears from the report of the Interstate Commerce Commission that the difference between the procedure followed by the defendant in regard to the nine carloads of seed here involved and that specified in the tariff rules and regulations amounts to more than a mere matter of form. It is stated on page 12 of the Interstate Commerce Commission Report and Order that:

"Transit arrangements historically have been a source of discrimination. Uniform rules and regulations in effective tariffs, are a necessary step in affording equal opportunities to all shippers operating under like circumstance. Constant policing by the carriers is necessary to prevent abuses of the privileges. The rules and regulations assailed have been in effect over a long period of time at many transit points. It may be:

assumed that they have played an essential part in the maintenance of equality of charges for competing transit operators."

Again on page 12 it is stated:

"Obviously, the desired claim procedure offers opportunities for irregularities which are minimized by the established transit rules."

Accordingly, it is the conclusion of the Court that the procedure followed by the defendant in shipping the nine carloads of beans, peas, and shelled corn was not a compliance with the terms of the tariff regulations so as to entitle the defendant to transit privileges.

Plaintiff is therefore entitled to judgment against defendant for the sum of $3,443.50, together with interest thereon from July 2, 1953, to the date of judgment herein.