**INTERNATIONAL BAKERAGE, INC.,**
**Plaintiff-Appellant,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America,**
**Defendants-Appellees,**

v.

**CENTRAL OF GEORGIA RAILROAD CO., Intervenor-Appellee.**

No. 78–2467.

United States Court of Appeals,
Fifth Circuit.

Aug. 9, 1979.

---

8. W. Faulkner, "A Rose for Emily," Collected Stories (1950) 120–21.

Robert E. Born, Atlanta, Ga., for plaintiff-appellant.

Mark L. Evans, Gen. Counsel, Henri F. Rush, Assoc. Gen. Counsel, Washington, D. C., William L. Harper, U. S. Atty., Atlanta, Ga., for I. C. C.

Peter S. Craig, Washington, D. C., for U. S. A.

David Popowski, I. C. C., Barbara A. Babcock, Asst. Atty. Gen., Washington, D. C., Richard K. Hines, Edgar A. Neely, Jr., Atlanta, Ga., for Central of Georgia R.R.

Before SIMPSON, TJOFLAT and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

This case involves the narrow issue of proper application of rate increases, authorized in Ex Parte No. 281, *Increased Freight Rates and Charges*, 341 I.C.C. 288 (1972), to shipments of recyclable material shipped under a transit privilege. The Interstate Commerce Commission (ICC) found that the rate increase was properly imposed upon the material, which had been recycled in transit, and denied the claim of International Bakerage, Inc. (International) for a refund of the alleged overcharge. The district court affirmed the ICC's decision, and we affirm the district court's ruling.

International ships bakery wastes from the site of their collection in Illinois to its processing plant in Morrow, Georgia. At the Morrow plant, International processes the material, basically by dehydration, to remove foreign material, eliminate harmful organisms and achieve proper blending. The finished product, Dehydrated Bakery Product (DBP), is then transported by rail to animal feed producers at various destinations. Once the bakery wastes have been treated to yield DBP, all that remains before the DBP is ready for commercial use is the addition of soybeans. The DBP-soybean mixture is suitable for use as feed for animals in substitution of corn.

International elected to ship the bakery wastes and DBP under a transit privilege. The transit privilege is a rate making con-

cept which, if made available by a railroad's published tariffs, permits a shipper to stop its shipment at an intermediate point for processing as a result of which either the form or substance of the commodity is changed. After processing, the finished product is shipped to its ultimate destination at the origin-to-destination rate applicable to the changed commodity. The resulting fiction is that the changed commodity was shipped from the point of origin, and the resulting shipping charge is known as a through rate. Through rates are generally lower than the combination of the flat rates for the movement of the unprocessed material from origin to the transit point and the processed commodity from transit point to destination. *Cudahy Packing Co. v. Baltimore & Ohio R.R. Co.*, 263 I.C.C. 503, 509–10 (1945); *Central Yellow Pine Ass'n v. Vicksburg, Shreveport & Pacific R.R. Co.*, 10 I.C.C. 193, 213–14 (1904); *see also Central R.R. Co. v. United States*, 257 U.S. 247, 254–55, 42 S.Ct. 80, 66 L.Ed. 217 (1921). Accordingly, the railroads in the instant case used the rate on DBP from Illinois to the destinations as the applicable through rate in computing the transit rate for International's shipments.

In addition to the transit rate, the railroads collected a 2.5 percent surcharge from International, as they asserted they were authorized to do by virtue of Ex Parte No. 281, *Increased Freight Rates and Charges*, 340 I.C.C. 358 (1972).[1] The tariff imposed under Ex Parte No. 281 contained an exception which prohibited application of the surcharge and increase to goods being transported for purposes of recycling.[2] International sought to bring the bakery wastes and DBP under the recyclable exception so as to avoid the Ex Parte No. 281 surcharge and increase. Although the railroads did not dispute the contention that bakery waste is a recyclable, they did not consider DBP to be a recyclable. Since the through rate applied to the transit arrangement was the rate on DBP from Illinois to the destinations, the railroads viewed the transit shipments through Morrow as not exempt from the Ex Parte No. 281 surcharge and increase. The disputed interplay between the two tariffs, that excepting recyclable goods from the Ex Parte No. 281 surcharge and increase and that providing for the transit privilege, gave rise to the litigation at hand.

On appeal, International seeks reversal of the ICC's and district court's decisions denying its claim for refund of the overcharges resulting from the assessment of the Ex Parte No. 281 surcharge and increase against its shipments of bakery wastes and DBP. The ICC agreed with the railroads that DBP is not a recyclable. The ICC then concluded that because International chose to ship both bakery wastes and DBP under a transit agreement which provided, in accordance with custom, that the through rate applicable to DBP should be applied, International's shipments were not subject to the exemption from the Ex Parte No. 281 surcharge and increase as recyclable commodities, even though the wastes, transported from point of origin to the transit point, were recyclable. The ICC reasoned that the fiction of transit necessarily involves an irrebuttable presumption that the commodity, in the form it moved outbound from the transit point to the ulti-

---

1. The surcharge was an interim measure which was later supplanted by a permanent general freight rate increase which averaged 4 percent on most commodities. 341 I.C.C. 290, 294–96 (1972). A general rate increase is a percentage increase applied by the railroads to the rates charged for the transportation of all commodities in order to recover additional costs incurred over a period of time. *See United States v. Louisiana*, 290 U.S. 70, 73–78, 54 S.Ct. 28, 78 L.Ed. 181 (1933).

2. The recycling exception was the result of an injunction issued in *Students Challenging Reg-ulatory Agency Procedures (SCRAP) v. United States*, 346 F.Supp. 189, 192 (D.D.C.1972), wherein the collection of the 2.5 percent surcharge was prohibited insofar as it increased the shipping costs of recyclable materials. The injunction was based on the Commission's failure to prepare an environmental impact statement before allowing the surcharge to go into effect. The Supreme Court later found that the district court did not have jurisdiction to enjoin the collection of the surcharge. *United States v. SCRAP*, 412 U.S. 669, 690–98, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973).

mate destinations, was really transported without interruption from the Illinois origins, through the transit point, to the destinations in the Southeast. To rebut the presumption in part, the reasoning continues, would rebut it altogether and require the application of combination rates (the flat rate on wastes from Illinois to Morrow plus the flat rate on DBP from Morrow to destination) which, even without the Ex Parte No. 281 increase on the wastes inbound to the transit point, are substantially higher than the through rate on DBP with the increase. The district court affirmed the ICC's conclusions.

International contends on appeal that DBP is recyclable, so that the surcharge was improperly assessed. International argues in the alternative that, even if only the bakery wastes and not the DBP are recyclable, the surcharge should not have been assessed because under the transit rate there is no way to separate the portion of the shipments that did not involve recycling from the portions that did; thus, the rate increases must be inapplicable over the entire route of movement.

Our jurisdiction to review International's claim on appeal is granted at 28 U.S.C.A. § 2342(5). The proper scope of our review of ICC decisions is firmly established. *See, e. g., Mississippi Valley Barge Line Co. v. United States,* 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed.2d 1260 (1934). "The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body." *Id.* at 286–87, 54 S.Ct. at 694. *Accord, Keller Industries, Inc. v. United States,* 449 F.2d 163, 174 (5th Cir. 1971). In this case, the ICC clearly set forth the grounds on which it acted; we may thus comfortably assess the propriety of its determinations. *See Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Board of Trade,* 412 U.S. 800, 806–07, 93 S.Ct. 2367, 37 L.Ed.2d 350 (1973). The ICC's aforementioned conclusions, regarding DBP's nonrecyclable nature and the technical necessity for the transit privilege, once elected by International, to control the determination of the applicable shipping rate, are buttressed by its policy considerations. The

ICC recognized that the purpose of the transit privilege is to equalize the geographical advantage competing manufacturers have over one another; to allow the contested exemption in the instant case would unfairly favor processors of recyclables who are distantly located from their wastes sources over processors who reprocess wastes at locations close to their sources and then ship to distant destinations.

We conclude that the record reveals a rational basis for the ICC's findings that DBP is not a recyclable and that the transit privilege must be strictly construed. With regard to DBP's nonrecyclable nature, DBP has a new identity as a complete fee ingredient following the wastes' processing and requires no further processing before it can be used as a feed additive. As to the ICC's second finding, the courts have previously observed that transit, being a privilege, applies only if the conditions prescribed with reference to it are met. *See Gulf, Mobile and Ohio R.R. Co. v. United States,* 312 F.2d 921, 925 (Ct.Cl.1963); *Chicago & N. W. R. Co. v. Connor Lumber & Land Co.,* 212 F.2d 712, 717 (7th Cir. 1954); *General Motors Corp. v. United States,* 359 F.Supp. 1168, 1173 (E.D.Mich.1973), *aff'd,* 492 F.2d 1243 (6th Cir. 1974); *Atchison, Topeka & Santa Fe Ry. Co. v. John Sexton & Co.,* 339 F.Supp. 1202, 1206 (D.Kan.1972). International had a choice of rates between the transit privilege, as customarily applied, and the separate flat rates with the rate on the wastes exempted from the Ex Parte No. 281 surcharge and increase. International elected the transit privilege and is bound to the shipping rates determined thereunder.

AFFIRMED.