**SEABOARD COAST LINE RAILROAD COMPANY, Plaintiff,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, a/k/a Amtrak, Defendant.**

Nos. 75–92–Civ–J–B, 78–15–Civ–J–B.

United States District Court, M. D. Florida, Jacksonville Division.

May 14, 1980.

James F. Moseley, Toole, Taylor, Moseley & Joyner, Neill W. McArthur, Jr., Jacksonville, Fla., for plaintiff.

Donald G. Avery, Slover & Loftus, Washington, D. C., George L. Hudspeth, Mahoney, Hadlow & Adams, Jacksonville, Fla., for defendant.

## OPINION

### FACTS

SUSAN H. BLACK, District Judge.

This case requires the Court to analyze the relationship between the National Railroad Passenger Corporation (hereinafter "Amtrak") and those railroads for which it has assumed responsibility for intercity rail passenger service. In October, 1970, due to the large financial losses being suffered by railroads providing intercity rail passenger service, Congress enacted the *Rail Passenger Service Act.* 45 U.S.C. § 501, *et seq.* (hereinafter "Amtrak Act"). This act established the defendant, Amtrak, and authorized it to contract to assume the intercity rail passenger responsibilities of other railroads.

On April 16, 1971, Amtrak entered into such an agreement (hereinafter "the agreement") with plaintiff Seaboard Coast Line Railroad Co. (hereinafter "SCL"). By the agreement, Amtrak assumed SCL's responsibility to provide intercity rail passenger service and SCL agreed to pay an "entry fee" and to operate passenger trains for Amtrak at a rate of compensation specified by the agreement. The operation of passenger trains by SCL includes the maintenance and servicing of cars and locomotives used in this service. SCL performs the maintenance at various repair shops throughout its system and, therefore, must transport materials and supplies, as well as the equipment and parts to be repaired, among those repair shops.

SCL operates passenger trains and performs maintenance and repair services at the rates specified in the agreement. However, since 1972, it has sought to recover for transportation services at common carrier tariff rates which are much higher than those specified in the agreement. Amtrak rejected SCL's claim for transportation services incident to maintenance and repair services at this higher rate contending they are covered by the agreement.

### PROCEDURAL POSTURE

On February 12, 1975, SCL filed action 75–92 (hereinafter "1975 action") seeking to collect unpaid freight charges in accordance with its published tariffs. On May 12, 1975, pursuant to an arbitration agreement between the parties, Amtrak served a Notice of Intention to Arbitrate contending that the services at issue in the 1975 action were performed under the agreement, and on April 14, 1975, it moved to stay the 1975 action pending arbitration. A stay was granted on June 26, 1975. SCL appealed this stay arguing that to the extent the services at issue were governed by the agreement, the agreement was void as a violation of § 6(7) of the *Interstate Commerce Act.* 49 U.S.C. § 6(7). The Fifth Circuit upheld the stay, but specifically refused to rule on the legality of the parties contracting for transportation services at other than tariff rates. *Seaboard Coast Line R.R. v. National Rail Passenger Corp.,* 554 F.2d 657 (5th Cir. 1977). Thereafter, the dispute was submitted to arbitration. "NAP Case No. 32, *In Re Charges for Transportation Services.*"

While arbitration was pending, SCL continued to provide transportation services for Amtrak and continued to demand payment at tariff rates. Amtrak continued to refuse payment above the contract rate. On January 6, 1978, in order to avoid the statute of limitations, SCL filed Case No. 78–15 (hereinafter "1978 action") claiming reimburse-

ment for transportation services provided since filing the 1975 action. On January 27, 1978, the parties agreed to a stay of the 1978 action and to its consolidation with the 1975 action. On January 30, 1978, the two actions were consolidated and the 1978 action was stayed.

On March 17, 1978, the National Arbitration Panel issued its "Decision and Award," ruling that, with a minor exception for which Amtrak has already made payment to SCL at tariff rates, the services at issue were provided pursuant to the agreement. However, the panel also specifically refused to address the legality of the agreement as applied to transportation services.

The case is presently before the Court on Amtrak's Petition to Confirm Arbitration Award and Motion for Summary Judgment and SCL's Objection to Confirmation and Cross-Motion for Summary Judgment. At a hearing on October 18, 1979, both parties agreed that the case is ripe for summary judgment, the only issue in dispute being the legality of the agreement as it applies to the transportation services at issue. In order to so posture the case, the parties have stipulated as to damages. They agree that if Amtrak prevails and the Court holds the contract rates valid, it shall enter judgment for SCL in the amount of $15,047.00 in the 1975 action and $55,107.00 in the 1978 action. On the other hand, if SCL prevails and the Court holds that tariff rates apply, they agree that judgment should be entered for SCL in the amount of $80,673.53 in the

1975 action and $280,212.10 in the 1978 action.

## DISCUSSION

SCL argues that as a common carrier of freight by rail, it is prohibited by § 6(7) of the Interstate Commerce Act, 49 U.S.C. § 6(7),[1] from contracting to charge other than published tariff rates. *Louisville and Nashville R. Co. v. Maxwell*, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853 (1915). These tariffs have the force of statute and bind both shipper and carrier to the tariff rate by force of law. *Lawden v. Simonds-Shields-Lonsdale Grain Co.*, 306 U.S. 516, 59 S.Ct. 612, 83 L.Ed. 371 (1939), *reh. denied*, 307 U.S. 649, 59 S.Ct. 792, 83 L.Ed. 1528 (1939). Amtrak agrees with this general statement of law, but cites several exceptions which it contends exclude transportation services performed under the agreement from the general application of § 6(7) of the Interstate Commerce Act.

Amtrak initially cites § 402 of the Amtrak Act. 45 U.S.C. § 562.[2] This section authorizes Amtrak to "contract with railroads . . . for the . . . provision of services on such terms and conditions as the parties may agree." Thus, it appears that the Amtrak Act includes a specific exception to the Interstate Commerce Act which allows the type of agreement at issue. SCL, however, contends that § 402 must be read in conjunction with

1. *Transportation without filing and publishing rates forbidden; rebates; privileges.* No carrier, unless otherwise provided by this chapter, shall engage or participate in the transportation of passengers or property, as defined in this chapter, unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this chapter; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so spec-

ified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs.

2. *Facilities and service agreements—Contracts with railroads or regional transportation agencies; authority of Interstate Commerce Commission; fixing of compensation; agreements with State, local or regional transportation agencies; disagreement procedures; criteria for compensation.* (a) The Corporation may contract with railroads or with regional transportation agencies for the use of tracks and other facilities and the provision of services on such terms and conditions as the parties may agree. . . .

§ 401(a)(1). 45 U.S.C. § 561(a)(1).[3] This section relieves SCL of its responsibilities as a common carrier of passengers, but not, SCL points out, as a common carrier of freight. Thus, SCL argues, § 402 should be read to authorize contracts on such terms as the parties may agree solely for services which SCL is not obligated to perform as a common carrier of freight. However, SCL distinguishes services which it is obligated to perform as a common carrier of freight for which it must charge tariff rates.

This distinction has no basis in the statute. Section 401 does not deal at all with services provided to Amtrak by other railroads. It simply authorizes Amtrak to relieve other passenger carriers of their responsibility for passenger services. Section 402 authorizes Amtrak and other railroads to reach agreements on the provision of services and facilities so that Amtrak may better and more economically provide passenger service. Both the logic and language of the statute require that the words "on such terms and conditions as the parties may agree" apply to all services provided by SCL including those which it may perform for other customers in its role as a common carrier of freight.

▆ Actually, Section 402 does nothing more than conform to and formalize a previous judicially created exception to § 6(7). In *Santa Fe & P. R.R. Co. v. Grant Bros. Construction Co.*, 228 U.S. 177, 33 S.Ct. 474, 57 L.Ed. 787 (1913), the Supreme Court recognized that services performed by a common carrier need not necessarily be performed in that capacity. In that case Santa Fe contracted with Grant Bros. to perform grading work in the construction of additional track. The contract provided that the railroad would provide transportation for the company's men and equipment at less than tariff rates but would not be liable for any damage to the equipment. The Court noted the established doctrine that a common carrier could not contract for immunity from liability for its negligence, but held the rule had no application when a railroad was acting outside the performance of its duty as a common carrier. Santa Fe was held to be so acting in providing its services to Grant Bros. The services were not offered as a common carrier but simply incidental to the construction contract. "It is apparent that there may be special engagements which are not embraced within its duty as a common carrier, although their performance may incidentally involve the actual transportation of persons and things, where carriage in other circumstances might be within its public obligation." *Id.* at 185, 792, 33 S.Ct. at 477.

The provision of transportation services to Amtrak is part of a similar "special engagement." The services are not performed as a common carrier, but as incidental to the agreement between Amtrak and

**3.** *Assumption of intercity rail passenger service by the Corporation—Contracts; passenger deficit payments; determination of the amount; referral to the Interstate Commerce Commission; payment schedule.* (a)(1) On or before May 1, 1971, the Corporation is authorized to contract and, upon written request therefor from a railroad, shall tender a contract to relieve the railroad, from and after May 1, 1971, of its entire responsibility for the provision of intercity rail passenger service. On or after March 1, 1973, but before January 1, 1975, the Corporation is authorized to contract, and upon written request therefor, shall tender a contract to relieve the railroad of its entire responsibility for the provision of intercity rail passenger service and such relief shall become effective upon the date of which such contract is entered into. Contracts may be entered into on or before May 1, 1971, notwithstanding the fact that the decision of the Commission under section 502(6) of this title with respect to avoidable loss has not become final. Any contract entered into before such decision of the Commission has become final shall be subject to adjustment to assure that the contract is consistent with such final decision of the Commission. The contract may be made upon such terms and conditions as necessary to permit the Corporation to undertake passenger service on a timely basis. *Upon its entering into a valid contract (including protective arrangements for employees), the railroad shall be relieved of all its responsibilities as a common carrier of passengers by rail in intercity rail passenger service under part I of the Interstate Commerce Act or any State or other law relating to the provision of intercity passenger service: Provided,* That any railroad discontinuing a train hereunder must give notice in accordance with the notice procedures contained in section 13a(1) of Title 49 (emphasis added).

SCL to relieve SCL of its responsibility for passenger service. This is clear from the agreement itself. Section 8.7 of the agreement provides, "[i]n rendering any service . . . hereunder, Railroad is acting solely pursuant to this agreement . . . and not in the capacity as a common carrier by railroad." It is clear from this section that the parties intended that SCL act incidentally to the agreement in providing the disputed services rather than as common carrier.

Not only does the statutory and case law support Amtrak's position, but the very purpose of the Rail Passenger Service Act requires that Amtrak receive these services at contract rates. Prior to passage of the act, SCL, as well as other passenger lines, were suffering tremendous financial losses on the provision of passenger services. Part of this loss was attributable to the necessity of providing for its own account the same services SCL now provides Amtrak. In order to relieve the railroads of this loss, Congress established Amtrak to assume responsibility for passenger service. By subsidizing Amtrak, Congress shifted the loss from the railroads to the public. SCL, however, now seeks to convert those services on which it previously suffered a loss into profit by increasing the cost to Amtrak and, therefore, the drain on the treasury. This result clearly was not contemplated by the Amtrak Act and is not required by the Interstate Commerce Act.

The Court holds that logic, case law, and statutory provisions all support Amtrak's claim that it is required only to provide SCL with payment at contract rates. Because of the Court's holding on this issue, it need not address the applicability of other exceptions claimed by Amtrak, nor need it address SCL's objections to confirmation of the arbitration award. Therefore, the Court will this day enter an order confirming the arbitration award and entering judgment for SCL in the amount of $15,047.00 in the 1975 action and $55,107.00 in the 1978 action.