645 F.2d 513
 SEABOARD COAST LINE RAILROAD COMPANY, a Virginia
Corporation, Plaintiff-Appellant,
v.
NATIONAL RAILROAD PASSENGER CORPORATION, a/k/a Amtrak, a
corporation organized under the Rail Passenger
Service Act of 1970, and the laws of the
District of Columbia,
Defendant-Appellee.
 Nos. 80-5451, 80-5452.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit B
 May 22, 1981.
 Toole, Taylor, Moseley & Joyner, James F. Moseley, Neill W. McArthur, Jr., Jacksonville, Fla., for plaintiff-appellant.
 Slover & Loftus, Donald G. Avery, Washington, D. C., Mahoney, Hadlow & Adams, George L. Hudspeth, Jacksonville, Fla., Paul Fogle Mickey, Jr., Victor David Ryerson, Washington, D. C., for National Railroad Passenger Corp.
 Appeals from the United States District Court for the Middle District of Florida.
 Before DYER, TJOFLAT and FAY, Circuit Judges.
 DYER, Circuit Judge:
 
 
 1
 The sole issue presented by these appeals is whether Seaboard, in rendering incidental transportation services to Amtrak in connection with its operation and maintenance of Amtrak passenger trains, must charge Amtrak in accordance with Seaboard's published common carrier tariff rates or whether Seaboard is bound by the lower rates specified in the National Railroad Passenger Corporation agreement entered into between the parties.
 
 
 2
 The district court, 489 F.Supp. 916, entered summary judgment in favor of Amtrak for the compensation due Seaboard under the contract. Seaboard appeals. We affirm.
 
 
 3
 The facts are not in dispute. In October 1970, because of the continuing deterioration of rail passenger service, a crisis was sought to be averted by Congress by passing the Rail Passenger Service Act of 1970, Public Law 91-518, 45 U.S.C.A. § 501 et seq., creating the National Railroad Passenger Corporation (Amtrak Act). Under the terms and conditions set forth in the Act Amtrak was authorized to contract with a railroad that so desired to relieve it of its entire responsibility for the provision of intercity rail passenger service.
 
 
 4
 On April 16, 1971 Seaboard and Amtrak entered into a contract entitled National Railroad Passenger Service Corporation Agreement (hereinafter Agreement) under which Seaboard was relieved of its common carrier responsibility for intercity rail passenger service in return for the payment of an "entry fee" to Amtrak under § 401 of the Act, and the operation of passenger service on behalf of Amtrak for the compensation specified in the contract.
 
 
 5
 Seaboard concedes that under the Agreement it must perform maintenance and servicing of cars and locomotives used in its operation of passenger service. To accomplish this Seaboard must, as it did before entering into the Agreement with Amtrak, frequently transport materials and supplies in its freight trains and dead head cars and locomotives to various repair shops throughout its system.
 
 
 6
 In late 1972 Seaboard billed Amtrak at common carrier freight tariff rates for the inter-shop transportation. Amtrak refused to pay the tariff rates contending that the transportation services were covered by and compensable under the Agreement.
 
 
 7
 In February 1975 Seaboard filed suit in the district court seeking to recover $80,673.53 from Amtrak representing charges for freight shipments made in accordance with its common carrier freight tariff rates. On motion of Amtrak the district court ordered the cause to arbitration and stayed the suit pursuant to 9 U.S.C.A. § 1 et seq. Seaboard appealed. We affirmed the stay order but held that Seaboard would have the right to argue its statutory claim as a defense to enforcement of an arbitration award against it. Seaboard Coastline Railroad Company v. National Railroad Passenger Corporation, 554 F.2d 657 (5th Cir. 1977).
 
 
 8
 On January 6, 1978 Seaboard filed another suit for collection of freight charges accruing after those in the first suit claiming $280,212.10 calculated under the tariff rates. The district court consolidated the causes.
 
 
 9
 On March 17, 1978 the National Arbitration Panel ruled that the services now in issue were performed under the Agreement and were to be paid for at contract rates. The district court granted Amtrak's motion to confirm the arbitration award and entered summary judgment for Amtrak finding that compensation for the inter-shop transportation of materials and supplies for the maintenance and repair of passenger equipment was governed by the National Rail Passenger Corporation operating agreement Seaboard appealed.
 
 
 10
 The basic thrust of Seaboard's argument is that while it admits that it is obligated under the Agreement with Amtrak to transport materials and supplies in its freight trains to repair shops on its system so that it may perform its responsibility for maintenance, this obligation is merely a recitation of an existing obligation under former Section 1(4), recodified Section 11101(a) of the Interstate Commerce Act, 49 U.S.C.A. § 1(4), recodified 49 U.S.C.A. § 11101(a), read in conjunction with former Section 6(7), recodified Section 10761 which, in sum, requires Seaboard to furnish transportation of property upon a reasonable request for such transportation at reasonable rates and charges. But, Seaboard points out, such rates and charges can be no more or less or different than the rates contained in the freight tariffs on file with the Interstate Commerce Commission. This is so, Seaboard argues, because of the well recognized general rule that freight tariffs on file with the Commission have the force and effect of statute, therefore the carrier and the shipper are bound to the tariff by force of law. Lowden v. Simonds-Shields-Lonsdale Grain Co., 306 U.S. 516, 59 S.Ct. 612, 83 L.Ed. 953 (1939). And since this requirement is absolute there may be no deviation from the rates even by contract. New York Central & Hudson R. Co. v. York & Whitney, 256 U.S. 406, 41 S.Ct. 509, 65 L.Ed. 1016 (1921). It follows, argues Seaboard, that the provision in the Agreement which requires Seaboard to provide transportation of materials and supplies incidental to its responsibility to provide maintenance and repair services at less than tariff rates is unlawful.
 
 
 11
 Having said this, Seaboard further contends that Section 402(a) of the Amtrak Act, 45 U.S.C.A. § 562(a)[1] does not preclude application of its freight tariff. It argues that when the basic rules of statutory construction are applied the issue can be succinctly stated as follows: does the clause "provision of services" in the statute, 45 U.S.C.A. § 562(a) include and mean "freight movement?" Seaboard concludes that this cannot be so because the Act, taken in context, neither controls nor governs freight movements or tariffs. Moreover it notes that everywhere that the word "service" is used it is in the context of passenger service.
 
 
 12
 The single issue stated by Seaboard is not that simple. We are not concerned with freight services generally, but only with incidental freight services that are directly related to Amtrak's passenger operations, services required for or in connection with the operation of Amtrak trains over Seaboard's lines. Put another way, is the movement of materials and equipment for maintenance and repair purposes between Seaboard's shops somehow separable from the services Seaboard has contracted to provide Amtrak. We think not.
 
 
 13
 The wording of the Act and its legislative history persuades us that the parties were at liberty to agree upon rates aside from the tariff rates for the incidental inter-shop transportation of materials and equipment needed by Seaboard to effect the maintenance and repairs required of it by the Agreement. In determining what the words "services" and "provision of services" in the Act modify or describe it is necessary to differentiate between the services that Amtrak is to provide for the public, which, of course, relate to the operation of passenger trains and the "provision of services" in Section 402(a) of the Act which relate to the services that Seaboard is to provide for Amtrak. Clearly the "provision of services" includes equipment repairs and maintenance which relates to passenger service but does not constitute passenger service.
 
 
 14
 The legislative history confirms our analysis of the Act. It was the culmination of Congressional efforts to meet the crisis of a deteriorating, soon to be abandoned rail passenger service because the railroads were losing money on this service. S.Rept.No. 91-765, April 9, 1970 (Committee on Commerce) at pages 1-7; H.R.Rept.No. 91-1580, October 7, 1970 (Committee on Interstate and Foreign Commerce) at page 1, U.S.Code Cong. & Admin.News 1970, p. 4735.
 
 
 15
 Section 401 of the Act directed Amtrak to offer contracts to railroads to relieve them of their obligation to run intercity passenger trains. If the offer was accepted, Amtrak was required to assume the responsibility of operating the trains if they were in a Basic System designated by the Secretary of Transportation. Then Amtrak was to step into the shoes of the railroad and carry out the obligation for it by operating passenger trains over its lines. It seems quite obvious that the legislative history contains no suggestion that the Act was intended to transform the railroad's passenger service losses into a method of generating additional profits for them at the expense of the federal treasury.
 
 
 16
 The expectation was that Amtrak would make money on passenger service. 116 Cong.Rec. H 10074. It is incongruous therefore that Congress meant for the operation of passenger service to cost Amtrak more than it had cost the railroads. But that result would necessarily follow if Amtrak is required to pay tariff rates to Seaboard for the support services it needs to provide passenger services, even though Seaboard had been able to obtain such services at cost by performing them itself. Of course, in this instance Amtrak could not provide such services itself because it had no freight trains.
 
 
 17
 We conclude that Section 402(a) of the Act authorizes Amtrak to "contract with (Seaboard)... for the... provision of service on such terms and conditions as the parties may agree..." Thus Seaboard's provision of incidental transportation services for Amtrak at the contract non-tariff rates is authorized.[2]
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 Section 402(a) of the Amtrak Act, 45 U.S.C.A. § 562(a) provides in pertinent part:
 "(Amtrak) may contract with railroads ... for the use of tracks and other facilities and the provision of services on such terms and conditions as the parties may agree. In the event of a failure to agree, the Interstate Commerce Commission shall ... if it finds that doing so is necessary to carry out the purposes of this Act, order the provision of services or the use of tracks or facilities of the railroad by (Amtrak), on such terms and for such compensation as the Commission may fix as just and reasonable .... In fixing just and reasonable compensation for the provision of services ... ordered by the Commission under the preceding sentence, the Commission shall, in fixing compensation in excess of incremental costs, consider quality of services as a major factor in determining the amount (if any) of such compensation ...."
 
 
 [2]
 In addition to finding that Section 402(a) of the Act authorized Amtrak to receive the incidental transportation services at the Amtrak rates the district court also based its holding on the "special engagements" doctrine articulated in Santa Fe & P. R. Co. v. Grant Bros. Construction Co., 228 U.S. 177 (1913). We find it unnecessary to consider or decide whether this case is within the parameters of the holding in Grant Bros
 We also find it unnecessary to decide what effect, if any, the passage of the Staggers Rail Act of 1980, 49 U.S.C.A. § 10101 note, 94 Stat. 1895 (1980) has on the case presented by this appeal.