George **FOLGNER**, Plaintiff,

v.

**ITALIAN LINE** and Panama Canal Company, Defendants.

Civ. No. 7632.

District Court, Canal Zone, Division Balboa.

Nov. 6, 1974.

De Castro & Robles, Balboa, Canal Zone, for plaintiff.

Roy V. Phillipps, Balboa, Canal Zone, for defendant Italian Line.

Earl R. McMillin, Dwight A. McKabney, John L. Haines, Jr., Balboa Heights, Canal Zone, for defendant Panama Canal Company.

CROWE, District Judge.

## STATEMENT OF FACTS

Plaintiff commenced this litigation on November 29, 1972 against Italian Line (the ocean carrier) and Panama Canal Company (the stevedore), seeking to recover damages for the total loss of one Ford Econoline Camper and its contents which vehicle dropped into Cristobal Harbor, Canal Zone, during discharge from the Italian Line vessel DONIZETTI.

As a defense to the action, defendant, Italian Line, contended that its liability, if any, was limited by the terms of its long form bill of lading to a maximum of $500 per package or per customary freight. Plaintiff was issued a long form bill of lading by Italian Line at the port of shipment, Guayaquil, Ecuador, and Plaintiff signed this document.

Counsel for all parties have stipulated in open court, and the Court has ruled, that the Italian Line long form constituted the contract of carriage for Plaintiff's Camper. Further, counsel for all parties have stipulated in open court, and the Court has ruled, that the Camper constituted the "customary freight unit" in this case.

As a defense to the action, defendant, Panama Canal Company, contended that its liability, if any, was limited by the terms of the Panama Canal Company/Canal Zone Government Official Tariff, Item 160.02(4) in the same way and to the same amount as that of Italian Line. Item 160.02(4) of the tariff stated:

"(4) In handling cargo and baggage and making local deliveries in Colon, Panama and the Canal Zone, the Panama Canal Company acts as the agent of the delivering ocean carrier, and the liability of the Panama Canal Company shall be limited by the provisions of the bill of lading or the terms of passage contract on the passenger ticket as the case may be."

At a pretrial conference held on June 20, 1973, it was agreed, *inter alia* by counsel for all parties that the legal issue of the effect of the Tariff Item 160.02(4) *vis-a-vis* Plaintiff should be resolved prior to any trial on the merits. Thus, Plaintiff on June 21, 1973 was permitted to raise this legal issue by bringing a motion to strike the defense of the Panama Canal Company based upon Item 160.02(4).

Argument on the motion was first heard on July 16, 1973. The Court postponed decision on the motion in order to permit certain discovery to take place. Following the close of discovery, argument was again had on September 11, 1974. The Court reserved judgment following the second argument and ordered that legal memoranda be filed and the issue again argued on October 4, 1974.

Final argument was had on October 4, and based upon the pretrial order, the discovery, the memoranda filed in this case and the stipulations and statements counsel for the parties, the Court has reached the conclusions of law set forth in this Order.

## CONCLUSIONS OF LAW

1. The liability of defendant, Italian Line, to Plaintiff, if any, is limited by the provisions of Italian Line's long form bill of lading to $500.

2. The limitation of liability provisions of the Italian Line long form bill of lading were not extended by the terms of the bill of lading to the stevedore, the Panama Canal Company.

3. The Panama Canal Company, a corporate agency of the United States, is authorized by its charter to operate docks, wharves, piers and harbor terminal facilities and other business enterprises necessary and appropriate for the accomplishment of its corporate goals. Further, the agency is authorized to furnish services to vessels and to persons

under the laws prevailing at the time and the policies adopted consistently with such laws. 2 C.Z.C. § 66(a)(4) & (5). In addition, the agency has the general power to determine the character of and necessity for its obligations and the manner in which they shall be incurred. 2 C.Z.C. § 65(a)(5).

4. The Court takes judicial notice of the historical fact that before the United States Government purchased the Panama Railroad, that private corporation operated docks, wharves, piers and harbor facilities and as part of its *modus operandi*, published tariffs which set forth the rates at which, and the terms pursuant to which, such services would be rendered. Further, when the United States Government purchased the Panama Railroad, Congress was cognizant of the practice of issuing tariffs. Finally, the Panama Canal Company and its predecessor, the Panama Railroad, have had the authority to operate docks and to supply necessary services throughout their history and throughout that history these Government agencies have published tariffs which have always contained language equivalent to that contained in the present day Item 160.-02(4).

5. In granting to the Panama Canal Company the authority to operate docks and to supply necessary services, Congress intended to grant to the Panama Canal Company the authority to do all that was necessary to conduct such operations, i. e., Congress intended to grant to the Panama Canal Company the authority to promulgate its tariff. This conclusion is particularly compelling here because at the time the privately held corporation was acquired by the United States, it was operating docks and supplying services. Furthermore,

as part of its method of operation the privately held corporation was publishing tariffs. And Congress, which was fully aware of the activities of the privately held corporation and of the use of tariffs, empowered the successor Government-owned corporation to continue the same activities.

6. A party who makes use of the facilities or services offered by another, which are offered or rendered under the terms of a lawfully established tariff, impliedly consents to be bound by the tariff terms. Lowden v. Simonds-Shields-Lonsdale Grain Co., 306 U.S. 516, 59 S.Ct. 612, 83 L.Ed. 953 (1939). The terms of a lawfully promulgated tariff become (in essence) the only agreement permitted between the party who supplies the facilities or services and the party who utilizes them. Union Wire Rope Corp. v. Atchison, T. & S. F. Ry., 66 F.2d 965 (8th Cir. 1933). These rules apply with equal force to tariffs governing terminal operations. United States v. ICC, 91 U.S.App.D.C. 178, 198 F.2d 958 (1952); State of Israel v. Metropolitan Dade County, Florida, 431 F.2d 925 (5th Cir. 1970).

7. Plaintiff was therefore bound by the terms of the Panama Canal Company/Canal Zone Government Official Tariff, Item 160.02(4). That tariff provision limits the liability of the Panama Canal Company, to Plaintiff, if any, in the same manner and to the same amount as the liability of Italian Line is limited, i. e., the liability of the Panama Canal Company to Plaintiff, if any, is limited to $500.

Wherefore, it is hereby ordered, adjudged and decreed that the motion of plaintiff, George Folgner, to strike the defense of defendant, Panama Canal Company, is denied.