SCHEB, Acting Chief Judge.
Appellant, International Bulk Shipping, Inc. (agent), challenges the trial court’s entry of a summary final judgment in favor of appellee, Manatee County Port Authority. We affirm in part and reverse in part.
The Manatee County Port Authority is a public entity which operates Port Manátee, a commercial port for ocean-going vessels. The port is governed by rates, rules and regulations known as Port Manatee Tariff No. 1. The agent is licensed by the port authority to act as a charterer and owner’s agent for vessels calling at Port Manatee *1322 and has acted in that capacity for several years. In November 1982 the charterer of the motor vessel “Menhir” appointed the agent to make arrangements for the vessel while it docked at Port Manatee to load phosphate. The owner, pursuant to an agreement with the charterer, furnished the agent with sufficient funds to pay for the ordinary port expenses. Because of the length of the M/V Menhir and certain restrictions on loading machinery at the Manatee Terminals, it was necessary' to turn the vessel around to complete loading. This shifting process involved the assistance of tugs, pilots, and line handlers and gave rise to an unanticipated shifting charge of $380. Soon after the vessel left port, the port authority billed the agent $5,174.31 for total services including the unanticipated charge. The agent denied liability for the $380, and, as a result, the full amount of the invoice remained unpaid.
The port authority filed suit against the agent for recovery of the invoice amount. Each side moved for summary judgment. The trial judge concluded that there was an issue of material fact as to the liability of an agent for a disclosed principal under the provisions of Port Manatee Tariff No. 1. Thus, he denied both motions. Thereafter, the port authority renewed its motion for summary judgment. This time, along with its motion, it submitted a deposition from Antonio M. Lubrano, the agent’s vice president, concerning his company’s role as agent. After considering the renewed motion and deposition, the trial judge concluded that there was no longer a genuine issue as to any material fact. On the basis of the pleadings, deposition, and affidavits, the court rendered summary final judgment for the port authority for $5,174.31 in damages, plus $1,174.55 in interest and $203.75 in court costs. This appeal by International Bulk Shipping ensued.
We have examined each point presented by the agent and conclude that there is just one meritorious issue: can International Bulk Shipping, acting as agent for a disclosed principal, be held liable for unanticipated shifting charges under the port authority’s tariff provision imposing liability on agents for “wharfage and similar bills”?
As the agent points out, absent an express agreement to the contrary, a maritime agent, acting for a disclosed principal, is not personally liable for the debts of the principal. See Blount v. Tomlinson, 57 Fla. 35, 48 So. 751 (1909). See also Atlantic Gulf Stevedores v. Revelle Shipping Agency, 750 F.2d 457 (5th Cir.1985); Lake City Stevedores, Inc. v. East West Shipping Agencies, Inc., 474 F.2d 1060 (5th Cir.1973). To apply this general proposition to the facts of this case, we must examine two questions. First, was the identity of the principal (vessel or vessel owner) known by the port authority? Second, did the provisions of the tariff constitute an express agreement that the agent would be responsible for goods and services furnished to its principal?
We find that the first prong of the test is met, since the port authority’s invoice for the charges at issue lists the name of the vessel receiving the services. Golden Marine Co. v. World Tide Shipping Corp., 1975 AMC 160 (N.Y. City Ct.1974) (disclosure held sufficient where plaintiff invoiced the vessel and owner in care of the agent); T.T.T. Travel Service, Inc., v. Rogers Terminals and Shipping Corp., 1983 AMC 2597 (E.D.La.1983) (disclosure of vessel’s name alone held sufficient for parties experienced in maritime transactions).
The second prong presents more difficulty. The port authority urges that we affirm the summary judgment on the ground that Port Manatee Tariff No. 1 imposes liability on the agent for services such as those involved here. We disagree. Rather, we think there remains a viable issue as to whether that liability includes payment of the unanticipated charge.
Generally, when an agent makes use of a port facility operating under a valid tariff, the agent consents to be bound by the tariff provisions. Folgner v. Italian Line, 383 F.Supp. 816 (D.C.Cir.1974). Here, the agent admits that it had a copy *1323 of Manatee Tariff No. 1 and was familiar with its provisions prior to November 1982.
Two provisions of the tariff are particularly relevant. Item 165 states:
The use of the Terminal facilities under the jurisdiction of Port Manatee shall constitute a consent to the terms and conditions of this tariff and evidences an agreement on the part of all vessels, their owners and agents, and other users of such facilities, to pay all charges specified in this tariff to be governed by all rules and regulations herein contained, to abide by local rules and regulations as set forth by Port Manatee and to be responsible for the disciplining of any infractions thereof by such persons and/or such firms and their employees.
(Effective Jan. 15, 1975.) (Emphasis added.)
Item 220 states in relevant part:
The Port Authority does not recognize the numerous shippers or consignees and cannot attempt to collect or assist in collecting wharfage and similar bills which may be passed on to the shippers and consignees by the vessel, its owners and agents when presented, and charges must be paid by the ship owner or the agent regardless of when the vessel, its owner or agents are reimbursed.
(Effective Feb. 1,1976.) (Emphasis added.)
The agent contends that even if Item 165 is enforceable against it, the shifting charges for the M/V Menhir are distinguishable from the charges specified under Item 220. As the agent points out, Item 300 of the tariff defines “wharfage” as “a charge assessed against the cargo or vessel on all cargo passing or conveyed over, onto, or under wharves or between vessels .... ” Thus, the agent concludes that shifting services, which solely concern the vessel and not the cargo, are different from “wharfage and similar bills.” Further, the agent suggests that the language “wharfage and similar bills” is ambiguous and must be construed most strongly against the port authority, which promulgated the tariff.
While we agree that the language of Item 220 does not clearly cover the shifting charges at issue, we observe that a court may consider trade customs and prior dealings between the parties to give meaning to the provision. See, Blackhawk Heat & Plumbing Co. v. Data Lease Finance Corp., 302 So.2d 404 (Fla.1974); Roe v. Henderson, 139 Fla. 386, 190 So. 618 (1939).
Here, Mr. Lubrano testified that his company had been acting as a ship’s agent at Port Manatee for some fourteen years prior to this controversy. However, the record does not reveal the nature and extent of the dealings between the parties following enactment of Items 165 and 220. Thus, an issue of material fact exists relating to the practical construction of these tariff provisions as to the contested charges.
Accordingly, we vacate that portion of the summary judgment relating to the $380 shifting charge and interest attributable thereto. We direct the trial judge to enter a revised judgment deducting these amounts. Further, we remand for an evi-dentiary determination on the issue of whether the agent can be held liable for the shifting charge under Port Manatee Tariff No. 1. The court may receive evidence as to trade practices between maritime agents and port authorities operating under similar tariffs. Additionally, the court may consider other relevant extrinsic evidence, including any evidence of conduct of the parties construing the meaning of Item 220.
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
DANAHY and LEHAN, JJ., concur.