569 So.2d 1357 (1990)
Lester G. KATES, Petitioner,
v.
Peter J. MILLHEISER, M.D., Respondent.
No. 90-1740.
District Court of Appeal of Florida, Third District.
November 13, 1990.
Marcelo M. Agudo, Miami, for petitioner.
Joseph T. Robinson, Miami, for respondent.
Before BARKDULL, BASKIN and LEVY, JJ.
LEVY, Judge.
Peter J. Millheiser, M.D., filed a cause of action in the county court against attorney Lester G. Kates claiming the attorney had failed to pay the doctor an expert witness fee. The county court entered a final judgment which held that the attorney was not responsible for the fee because the evidence showed that there was no express agreement by the attorney to pay the doctor's fee, and that the attorney was acting on behalf of a disclosed principal. The doctor then appealed to the Circuit Court, Appellate Division, which "Per Curiam Reversed", without a written opinion, the County Court decision. The attorney now petitions for a writ of certiorari to quash the decision of the Circuit Court.
As stated by this court in Andrew H. Boros, P.A., v. Arnold P. Carter, M.D., P.A., 537 So.2d 1134, 1135 (Fla. 3d DCA 1989) (citations and footnotes omitted): "Generally, an attorney serves as an agent for his client; the attorney's acts are the acts of the principal, the client. Absent an express agreement, an agent acting for a disclosed principal is not personally liable for the debts of the principal." Here, the evidence at trial showed that the attorney did not agree to pay the doctor's fee. It also showed that the attorney was acting on behalf of a disclosed principal. Thus, the attorney was clearly not responsible to pay the doctor's bill, and the County Court judge correctly entered a final judgment in favor of the attorney. See Andrew H. Boros, P.A., v. Arnold P. Carter, M.D., P.A., 537 So.2d at 1135. See also Blount v. Tomlinson, 57 Fla. 35, 48 So. 751, 753 (1909) (absent express agreement, agent acting for disclosed principal not liable for debts of principal); International Bulk Shipping, Inc. v. Manatee County Port Authority, 472 So.2d 1321, 1322 (Fla. 2d DCA 1985) (same); Johnson v. Estate of Fraedrich, 472 So.2d 1266, 1268 (Fla. 1st DCA 1985) (same); In Re Brugh's Estate, 306 So.2d 599, 600 (Fla. 2d DCA 1975) (same); Epperson v. Rupp, 157 So.2d 537, 538 (Fla. 3d DCA 1963) (same). For this reason, we quash the per curiam reversal of the circuit court sitting in its appellate capacity.
*1358 We find the per curiam reversal inappropriate for other reasons as well. First, it is the responsibility of the appellate courts to guide the trial courts as to questionable procedures or rulings. A per curiam reversal opinion does not give the trial judge any guidance as to how to correct the supposed error which was the basis of the reversal.
Second, to the extent that the reversal relates to evidentiary matters, it fails to place the trial lawyers on notice as to what issues are open for retrial.
Finally, the need for an appellate court to announce the reason for a reversal is essential to the integrity of the judicial process. It is important for litigants and the public to recognize that determinations develop as the result of a fair and just reasoning process as opposed to perceiving judicial decisions as unjustified and arbitrary. Ultimately, it is the responsibility of the judiciary to maintain the integrity of the legal system by ensuring that the judgment processes in the appellate system involve scholarly and fair deliberations which are open for the public to view.[1] When a case is appealed, the judgment under review is clothed with a presumption of correctness. Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla. 1979); Department of Transportation v. Morehouse, 350 So.2d 529 (Fla. 3d DCA 1977), cert. denied, 358 So.2d 129 (Fla. 1978). If the appellate court per curiam affirms the trial court decision, this means that the appellant failed to rebut the presumption of correctness, but still leaves the parties with the knowledge as to why the final judgment was reached.
However, in the situation where an appellate court per curiam reverses a final order or judgment, without an opinion, neither party is apprised of why that particular legal result was reached. Specifically, the parties are entitled to know exactly why the result reached at the trial level, which was presumed to be correct, was set aside by the appellate court.
It is for this reason that we find paramount among the responsibilities of an appellate court, the responsibility of writing opinions in all reversals and remands. See Whipple v. State, 431 So.2d 1011, 1015 (Fla. 2d DCA 1983) ("We write opinions in all reversals and remands"). In the interests of propriety and fairness, litigants cannot be left to wallow in a sea of confusion as to the rationale supporting a legal result.
Accordingly, we grant certiorari, quash the order under review, and reinstate the judgment of the County Court judge.
NOTES
[1] As stated by one commentator:

In the broader view, appellate justice can be the last best effort of our government and our law to gain the respect and acceptance of the people. Appellate justice should be a model for the government's dealings with citizens. Appellate courts are the most dignified and receptive authorities to which individuals can turn to express their legal dissatisfactions in a pointed way, with assurance of a direct response. If these courts do not deal justly with litigants, we cannot expect agencies or bureaucracies of lesser sensitivity to legal rights to do so. It is therefore important that justice on appeal be visible to all.
Carrington, Meador & Rosenberg, Preface to Justice on Appeal at v (1976).