**CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY, Plaintiff,**

v.

**PITTSBURGH–DES MOINES STEEL CO., Defendant.**

**NORFOLK AND WESTERN RAILWAY CO., Plaintiff,**

v.

**PITTSBURGH–DES MOINES STEEL CO., Defendant.**

**BURLINGTON NORTHERN, INC., Plaintiff,**

v.

**PITTSBURGH–DES MOINES STEEL CO., Defendant.**

Civ. Nos. 72–210–1, 73–104–1 and 74–208–1.

United States District Court, S. D. Iowa, C. D.

April 8, 1976.

Jerry P. Alt, Duncan, Jones, Riley & Finley, Des Moines, Iowa, for plaintiffs in Nos. 72–210–1 and 73–104–1.

Jerry E. Williams, Nyemaster, Goode, McLaughlin, Emery & O'Brien, Des Moines, Iowa, for plaintiff in No. 74–208–1.

James E. Cooney, Ahlers, Cooney, Dorweiler, Haynie & Smith, Des Moines, Iowa, for defendant.

## ORDER

STUART, District Judge.

These cases came on for hearing in chambers February 26, 1976 on cross motions for summary judgment. The plaintiff railroads were represented by Jerry P. Alt and Jerry E. Williams. James E. Cooney represented the defendant shipper. The Court has examined the motion papers and the files and holds that the defendant's motion for summary judgment must be granted. It is not clear whether the tariff should be applied under the facts of this case. Thus, judgment for the defendant is required.

These cases arise out of proposed freight charges levied by the plaintiff railroads for the transportation of certain bolsters from Greenville Piers, New Jersey, to Des Moines, Iowa. The cause of action arises under 49 U.S.C. § 6(7), which requires the transportation of property in accordance with tariffs. Subject matter jurisdiction is predicated upon 28 U.S.C. § 1337, which gives the Court jurisdiction over actions arising under federal commerce statutes.

The parties have filed a stipulation which sets forth the material facts. The defendant sold steel girders or beams for use on a bridge being constructed on the east coast. To transport the beams, the defendant shipper bolted or welded its bolsters to railroad cars provided by the plaintiffs. It would have been impossible to ship the steel girders without specially equipping the cars with the bolstering. The bolsters were required by the Association of American Railroads.

Upon unloading of the steel beams at their destination on the east coast, the cars, with bolsters still attached, were returned to Des Moines in accordance with instructions on the bills of lading. Upon arrival in Des Moines, the cars were reloaded and again sent to either New Jersey or New York.

In the present cases, plaintiffs are attempting to impose freight charges for the return shipments of these bolsters from Greenville Piers, New Jersey to Des Moines. Two hundred five such return shipments are claimed and the charges are alleged to total $39,984.01. The charges were not billed at the time of shipment. It appears that a connecting railroad, not a party to this action, first attempted to make charges against the plaintiffs, which charges have now been cancelled. Plaintiffs have not claimed freight charges for the return of similarly equipped cars from the Bronx, New York.

As will be discussed in more detail, the plaintiffs are levying the charges under a specific tariff which has been validly published and posted. Plaintiff railroads have stipulated that they have no records of ever previously claiming or collecting these types of charges for the many similar shipments by defendant over the plaintiff railroads.

The plaintiffs' position is that the return of the bolstered railroad cars to Des Moines constitutes a shipment for which charges must be levied under the applicable tariff. The specific issue is whether the shipment of defendant's bolsters constituted a shipment defined as "loose or in packages" within the meaning of the tariff. To determine the application of any tariff, it is necessary to determine the classification of the items shipped. To identify these bolsters, the plaintiffs first turn to Uniform Freight Classification 10. The UFC shows that "Bolsters: Blocking shipping, old, used" are identified as Item 20750. UFC 10, at 60. Item 20750 is further identified in the UFC as "blocking bolsters or cradles, shipping, old, used, *loose or in packages*". UFC 10, at 586 (emphasis supplied). Once this identification and definition of "bolsters" has been made, the plaintiffs argue that one of two UFC rules applies to further specify treatment of the bolsters.

The plaintiffs first point to the "in package" provisions of Rule 5(1) of the UFC to determine how bolsters attached

to railroad cars should be treated for shipping and charging purposes. Rule 5(1) provides in part:

BASES FOR CHARGES ON SHIPMENTS NOT COMPLYING WITH CLASSIFICATION REQUIREMENTS, AND MISCELLANEOUS REGULATIONS

SECTION 1.—(a) Packing requirements in this classification provide the minimum protection that must be afforded. Outer shipping container must be made of materials of such strength as to afford safe handling, reasonable and proper protection of contents and to protect against damage to other freight or equipment. Articles tendered for transportation may be refused for shipment unless in such condition and so prepared for shipment as to render the transportation thereof reasonably safe and practicable. Whether or not interior packing devices are a part of specific requirements, interior packing devices or forms must be provided where they are necessary to afford adequate protection against damage to the contents of a container. Articles, or articles and necessary interior packing devices, must reasonably occupy the full cubic capacity of the outer shipping container.

(b) Where packing specifications are not provided, articles will be accepted for transportation in any form of shipment other than in trunks, namely, "loose" or "in bulk" or "in packages" or "on skids".

(c) When "in packages" is provided in connection with separate description of articles, such articles will, except as specified in separate descriptions of articles, be accepted for transportation in any container other than trunks (whether or not constructed in accordance with the requirements of Rules 40, 41 or 51), or in any shipping form other than "in bulk", "loose", "in tank cars" or "on skids other than lift truck skids", providing such container or form of shipment will render the transportation of the freight reasonably safe and practicable.

Articles securely fastened to pallets, platforms or skids for lift trucks will be rated the same as "in bundles" or "in packages".

Articles in shipping containers authorized in separate descriptions of articles which are in turn securely fastened to pallets, platforms or skids for lift trucks will be rated the same as in the containers authorized.

The plaintiffs argue that Rule 5(1)(c) thus defines the treatment of all items classified "in packages". Bolsters were previously classified as "in packages", by Item 20750. The plaintiffs reason that "in packages" means in any shipping form other than certain enumerated forms and it follows that "in packages" would include bolsters which are attached to a railroad car.

The plaintiffs' second argument is that once the itemization of bolsters has been made as "blocking bolsters or cradles, shipping, old, used, loose or in packages", Rule 17 of the UFC applies to determine treatment for charges. Rule 17 of the UFC provides:

CLASSIFICATION BY ANALOGY

When articles not specifically provided for, nor embraced in the classification as articles "noibn", are offered for transportation, carriers will apply to classification provided for articles which, in their judgment, are analogous; in such cases agents must report facts to proper officer of Freight Department in order that rating applied may be verified and necessary classification provided. This rule will not apply in connection with ratings or rates published in Exceptions to the Classification or in commodity tariffs.

("Noibn" means "not otherwise indexed by name or number.")

From Rule 17, the plaintiffs argue that the best analogy would be to apply the rates as they have done to determine total freight charges for the bolsters attached to the cars in the present case. They claim it is not logical to charge for shipment of unattached bolsters and deny collection of charges for bolsters attached to the car. They assert that such an approach is most consistent with the public policy requirements that all freight must be shipped in accordance with tariffs and that any other approach would be to foster the free shipment of transportation in clear violation of 49 U.S.C. § 6(7).

Defendant's position is that the plaintiffs' premise is totally incorrect. It claims these cars are, and plaintiffs have so referred to them, "specially equipped railroad cars". The defendant asserts that it is absurd to classify as shipping items bolsters which are welded and bolted to railroad cars for the purpose of making the shipment of other property possible. Defendant would not identify or classify the bolsters involved in these cases as "Bolsters: blocking shipping, old, used" or "Blocking bolsters or cradles, shipping, old, used, loose or in packages".

The Court of Appeals for the Eighth Circuit has recently outlined several rules of construction which must be used to determine whether the words of tariff provisions are to apply in any particular situation. In *Penn Cent. Co. v. General Mills, Inc.* (8th Cir., 1971), 439 F.2d 1338, 1340–41, the court stated:

(I)n interpreting a tariff, its terms must be taken in the sense in which they are generally used and accepted; and it must be construed in accordance with the meaning of the words used. (Citations)

(T)he tariff should be construed strictly against the carrier since the carrier drafted the tariff; and consequently, any ambiguity or doubt should be decided in favor of the shipper. (Citations)

(S)uch ambiguity or doubt must be a reasonable one and should not be the result of a straining of the language. And, there must be a substantial and not a mere arguable basis in order to justify resolving the doubt against the carrier. (Citations)

(P)ublished rules relating to tariffs must have a reasonable construction and should be interpreted in such a way as to avoid unfair, unusual, absurd, or improbable results. (Citations)

(A) strict construction of a tariff against a carrier is not justified where such a construction ignores a permissible and reasonable construction which conforms to the intentions of the framers of the tariff, avoids possible violations of the law, and accords with the practical application given by shippers and carriers alike. (Citations)

The rule that tariff provisions are to be construed strictly and that all reasonable ambiguities must be resolved against the carriers is a well established proposition in transportation law. See, generally, *Chicago & N.W. Ry. v. Hunt-Wesson Foods, Inc.* (7th Cir., 1974), 504 F.2d 905; *United States v. Great N. Ry.* (8th Cir., 1964), 337 F.2d 243; *Christensen v. Northern Pac. Ry.* (8th Cir., 1950), 184 F.2d 534; and *Union Wire Rope Corp. v. Atchison, T. & S. F. Ry.* (8th Cir., 1933), 66 F.2d 965. See also, *Emery Air Freight Corp. v. United States* (Ct. Cl., 1974), 499 F.2d 1255.

A further rule of construction applicable to this case is:

The practical application of tariffs by interested persons should also be considered in determining the meaning of the tariffs. This conclusion follows from the rule that in interpreting contracts courts will give weight to what the parties themselves have done pursuant to their agreement.

*National Van Lines, Inc. v. United States* (7th Cir., 1966), 355 F.2d 326, 333. See also, *Penn Cent. Co. v. General Mills, Inc.,* supra.

The application of these rules to the cases at hand convinces the Court that the tariff in issue should not be construed as applying to bolsters attached to railroad cars being returned to the shipper for reloading. The Court does not believe that the drafters of the tariffs even considered whether shipper-furnished bolsters attached to cars so as to equip them to handle special shipments should be subjected to tariffs.

In the Court's opinion, a construction of the tariff as urged by plaintiffs is not possible if the words of the tariff are taken in their generally used and accepted meaning. The language is clearly intended to apply to articles which are in some manner prepared for shipment. Of course, if the bolsters were bolted to the cars so that the bolsters could be returned to the shipper safely, then the definition would apply. But application of the tariff in this instance would require that the Court ignore the reality of the situation. The bolsters were not attached to the cars for the purpose of shipping the bolsters. The bolsters could have been safely loaded for shipment in a much less permanent manner. Rather, the bolsters here were bolted and welded to the cars in order to alter the cars so they could safely and legally carry these long steel beams. Both the carrier and

shipper benefitted from the return of the cars for reloading.

Plaintiffs argue that bolsters attached to a car are "a form of shipment" within the "in packages" definition found at page 428 of UFC 10, Rule 5(1)(c), which provides that articles will be:

> (A)ccepted for transportation in any container other than trunks * * * or *in any shipping form* other than "in bulk", "loose", "in tank cars", or "on skids other than lift truck skids", providing such container or *form of shipment* will render the transportation of the freight reasonably safe and practicable. (Emphasis supplied)

This language does no more than state when articles which are being transported are acceptable to a carrier for safety and other purposes. This language, in the Court's opinion, is not sufficient to establish tariff charges for these specially equipped cars. Other language in this rule would apparently authorize tariff charges in appropriate situations. For instance, Rule 5(1)(c) also states that "articles in shipping containers authorized in separate descriptions of articles which are in turn securely fastened to pallets, platforms or skids for lift trucks will be rated the same as in the containers authorized". But the plaintiffs have not demonstrated in this record that a certain "rating" should be applied to bolsters welded or bolted to a railroad car.

It is the conclusion of the Court that the wording of the tariff provision is, at best, highly uncertain and ambiguous. It is impossible to ascertain from the words of the tariff whether they are intended to apply to this particular factual situation. This ambiguity is sufficient to grant the defendant judgment. As previously indicated, the Court also may consider the practical application of the tariff by interested persons. If the uncertainty and ambiguity were not enough in and of themselves to hold the tariff rates inapplicable to these facts, all doubts are resolved when this last factor is considered.

In its Order of September 11, 1975 the Court found that defendant had established a custom and practice in the railroad shipping industry of making return trips of specially outfitted freight cars without charge to the shipper. Although such custom and practice cannot be used to vary the terms and provisions of a tariff, *Lowden v. Simonds-Shields-Lonsdale Grain Co.* (1939), 306 U.S. 516, 59 S.Ct. 612, 83 L.Ed. 953; and *Chicago B. & Q. R.R. v. Ready Mixed Concrete Co.* (8th Cir., 1973), 487 F.2d 1263, the custom and practice may be used in construing the meaning of uncertain and ambiguous tariffs. The record is clear that these particular railroads have never charged this particular defendant for the return trip on any of the hundreds of specially equipped cars which have been returned to defendant for reloading. It is also undisputed that no charges have been made for similar cars delivering the same steel girders at the New York end of the bridge. The practical application of the tariff provisions thus mandates that no charges be allowed in the instant cases.

One other matter has puzzled the Court from the beginning of the case. In spite of the thousands of specially equipped cars that are used upon the various railroads, neither the Court nor the parties have found any authority discussing this particular issue. In view of the established custom and practice, it would appear that the lack of any authority allowing tariff charges under similar facts lends further support for the Court's interpretation of the tariffs.

The Court is of the opinion that the tariff rates cannot be applied to specially equipped cars because the tariffs are too uncertain and ambiguous to make it possible for the Court to determine whether the tariffs are intended to cover these situations. Consideration of the practical application of the tariffs by interested parties resolves all doubts in favor of nonapplication of the tariffs.

IT IS THEREFORE ORDERED that the plaintiffs' motions for summary judgment be, and hereby are, denied.

IT IS FURTHER ORDERED that the defendant's motion for summary judgment be, and hereby is, granted.

IT IS FURTHER ORDERED that the costs shall be assessed against plaintiffs.