HUGHES AIRCRAFT COMPANY; and
National Union Fire Insurance
Company, Plaintiffs,

v.

NORTH AMERICAN VAN
LINES, Defendant.

No. C–89–4017 WHO.

United States District Court,
N.D. California.

Nov. 30, 1990.

---

**556**

Mark W. Kelley, William Green, Roland R. Stevens, Fisher & Hurst, San Francisco, Cal., for plaintiffs.

Gordon D. McAuley, Reisinger & Rogers, San Rafael, Cal., for defendant.

1. National Union Fire Insurance Company is also a plaintiff.

## OPINION AND ORDER

ORRICK, District Judge.

In this action for damages to a computer shipped by defendant, North American Van Lines ("North American"), for plaintiff Hughes Aircraft Company ("Hughes"),[1] North American brings a motion for summary judgment to limit its liability to $12,408, the released value set forth in the relevant shipping tariff. Having considered the oral and written arguments of counsel in support of and in opposition to the motion, and good cause appearing therefor, the Court grants North American's motion to limit North American's liability to $12,408.

### I.

Hughes arranged with North American for shipment of a mainframe computer valued at over $3,000,000. Although Hughes requested that North American use two drivers to transport the computer, only one driver made most of the trip. That driver fell asleep at the wheel, causing the truck to run off the road and roll over. The accident caused Hughes to incur a liability of $2,500,000 to Electronic Data Systems, the owner and lessor of the computer, and to suffer a business interruption loss of over $250,000.

Hughes filed suit in state court for breach of contract, negligence, and recovery under the Carmack Amendment. North American removed the case to federal court.

Although North American accepts responsibility for the accident and acknowledges that its actions caused Hughes to suffer damages in excess of the shipment's release valuation, it disputes the damages to which Hughes is entitled. North American contends that its liability is limited to the tariff amount of $12,408, which it has tendered to Hughes. Hughes asserts that, due to the circumstances of the shipment, the tariff provisions do not apply, and it is entitled to the full value of the damage caused to the computer (over $2,500,000).

## II.

The Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 11707, allows interstate carriers that comply with certain regulations to limit by contract their liability to shippers. 49 U.S.C. §§ 10730 and 11707(c)(4). North American's contract with Hughes calls for a maximum payment for loss or damage of $.60 per pound of equipment shipped. It argues that because it is a common carrier that has complied with the applicable federal shipping laws,[2] the Carmack Amendment limits its liability for the shipment in issue to $12,408 (20,680 pounds times $.60 per pound).

Hughes makes three arguments in opposition to North American's motion. First, it claims that because North American was, at least for the shipment at issue, a contract carrier, and not a common carrier, the Carmack Amendment does not apply. Second, that even if the Carmack Amendment does apply, the contract between Hughes and North American contains an indemnity agreement that makes North American liable for all damages that Hughes suffered. Third, even if the Carmack Amendment does apply and the indemnity clause is not given effect, Hughes can still maintain its negligence claim. The Court rejects each of these arguments and finds that the Carmack Amendment applies to this dispute and limits North American's liability to Hughes.

## A.

The threshold question is whether North American is a common carrier, a contract carrier, or a common and a contract carrier.

The Court discusses each argument *seriatim.*

The caption of Corporate Purchase Agreement No. 3364 ("Purchase Agreement") between North American and Hughes clearly states that it is an agreement "for contract carriage." Paragraph 2.1 of the Purchase Agreement states that the "Agreement is undertaken pursuant to Section 10923 Sub A of the Motor Carrier Act of 1980," which concerns the registration of contract carriers. Paragraph 2.2 states that it "shall be performed under the 'class' authority granted [North American] for a contract carriage to shippers of household goods, electronics and displays." Section 10102(15)(B) of the Interstate Commerce Act defines a "motor contract carrier" as a "person providing motor vehicle transportation of property for compensation under continuing agreements with one or more persons (i) by assigning motor vehicles for a continuing period of time for the exclusive use of each such person; or (ii) designed to meet the distinct needs of each such person."[3] Hughes asserts that its Purchase Agreement with North American satisfies the second prong of this test,[4] making North American a contract carrier as to that Agreement.

North American argues that the Purchase Agreement is better understood as a hybrid, that is, a common and a contract carrier that offers Hughes the low rates associated with contract carriage while allowing North American to maintain its legal status as a common carrier. North American's conduct supports this view. North American set its rates in conformity with its published tariff rates, issued a bill of lading, and retained control over the actual shipping—all actions typical of a

---

**2.** Specifically, North American (1) maintained a tariff within the prescribed guidelines of the Interstate Commerce Commission; (2) obtained the Hughes' agreement as to the choice of liability; (3) allowed Hughes to pick between two or more levels of liability; and (4) issued a bill of lading prior to moving the shipment. *See Anton v. Greyhound Van Lines, Inc.,* 591 F.2d 103, 107–08 (1st Cir.1978) (describing procedures carriers must follow to benefit from Carmack Amendment's provisions).

**3.** Note that this definition includes all persons that provide such services. Section 10102(15)(A) includes only persons other than motor common carriers.

**4.** The contract between North American and Hughes was for two years, thereby satisfying the "continuing agreement" requirement. Because the service under the contract was offered only to Hughes, was specifically for high-value products and household goods, and required North American to provide goods upon demand, it satisfied the "distinct needs" requirement.

common carrier. *Cf. Ensco, Inc. v. Weicker Transfer & Storage Co.*, 689 F.2d 921, 924 (10th Cir.1982). North American also points to paragraph 2.1 of the Purchase Agreement with Hughes, which provides that the "Agreement shall in no way be construed to restrict [North American] from the performance of its normal duties as a common carrier under existing common carrier certificate," as proof that North American maintained its status as a common carrier while performing a carriage contract for Hughes. *See id.* at 925 ("carrier's status as a common carrier is determined ... by what it holds itself out to be"). The Court, however, finds that this paragraph could also support a finding that North American sought only to protect its right to act as a common carrier for third parties and not to define its legal identity with respect to Hughes. Accordingly, for the purposes of this summary judgment motion, the Court holds that North American was a common carrier that acted as a contract carrier for Hughes.

### B.

 Hughes argues that, because North American was acting as a contract carrier and not as a common carrier, the Carmack Amendment does not apply. Hughes cites 49 U.S.C. § 11707 in support of the proposition the Carmack Amendment does not apply to contract carriage. But § 11707(c)(4) states that a *"common carrier* may limit its liability for loss or injury of property transported" by meeting the requirements of § 10730. Emphasis added. Section 11707(c)(4) allows all common carriers that comply with § 10730's requirements to limit their losses; it does not exclude common carriers that act as contract carriers. Similarly, § 10730, the Carmack Amendment, allows the Interstate Commerce Commission to "authorize a carrier (including a motor common carrier of household goods[)] ... to establish rates for transportation of property under which the liability of the carrier for that property is

limited to a [reasonable] value established by written declaration of the shipper, or by a written agreement...." 49 U.S.C. § 10730(a).

Hughes offers no authority to support its contention that a common carrier forfeits its ability to limit its liability under § 10730 when it enters into an agreement to provide contract carriage. Neither §§ 10730, 11707(c)(4), nor any of the plaintiff's cited cases,[5] directly support Hughes' proposed interpretation of the statutes. In fact, recent legislative history argues against Hughes' proposed interpretation. In 1980, Congress amended 49 U.S.C. § 10930 to allow motor carriers to hold both a certificate as a motor common carrier and a permit as a motor contract carrier. At that time Congress could have amended 49 U.S.C. § 11707(c)(4) to give Carmack Amendment protection to only those common carriers not operating under a carriage contract, but it chose not to do so. And although Congress modified the Carmack Amendment in 1980 and again in 1986, it has not changed the Amendment's language to eliminate the liability limit protection enjoyed by common carriers operating under carriage contracts.

Indeed, the Purchase Agreement between Hughes and North American indicates that the parties believed that the Carmack Amendment would limit North American's potential liability to the released valuation rate. North American and Hughes agreed to a reduced shipping rate in exchange for a lower release value: the final agreement called for both a very low release rate ($.60 per pound as opposed to the standard $5.00 per pound) and a greatly reduced shipping rate ($.1424 per pound as opposed to the standard $.3295 per pound). Accordingly, the Court finds that the Carmack Amendment applies to the shipment in issue.

### C.

 The Court further finds that the Purchase Agreement's appended indemnifi-

---

5. In *CO–OPerative Shippers, Inc. v. Atchison, Topeka, & Santa Fe Railway*, 613 F.Supp. 788 (N.D.Ill.1985), the court held that the railroad's liability limitation could be unenforceable be-cause it conflicted with another provision in its shipping contract. But, unlike North American, the defendant carrier in that case failed to comply with the requirements of § 10730.

cation clause, which provides that "Seller shall indemnify and hold harmless Buyer ... from and against all claims, judgements, liabilities, losses, injuries, and damages of every nature ... caused by the acts or omissions to act by the Seller ... directly or indirectly arising out of the performance of this purchase order ...," does not expand North American's liability in this matter. Because the Carmack Amendment applies to this transaction, and a tariff's terms bind the parties with the force of law, a contract clause purporting to expand the carrier's liability is unenforceable. *See Lowden v. Simonds–Schields–Lonsdale Grain Co.*, 306 U.S. 516, 520, 59 S.Ct. 612, 614, 83 L.Ed. 953 (1936).

### D.

 The Court also finds that the Carmack Amendment preempts Hughes' negligence claim. Although there is no Ninth Circuit case on point, "the majority of circuit courts that have addressed the issue of whether or not state and common law remedies are preempted where goods are damaged or lost in interstate commerce have held that the Carmack Amendment does preempt state and common law remedies...." *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1414 (7th Cir.1987). In finding that the Carmack Amendment preempts Hughes' negligence claim, this Court adopts the logic set forth by the Seventh Circuit in *Hughes:*

> The purpose of [the Carmack Amendment] is to establish uniform federal guidelines designed in part to remove the uncertainty surrounding a carrier's liability when damage occurs to a shipper's interstate shipment. To permit a shipper to choose among various types of remedies would cause confusion and insurmountable problems and defeat the Act's purpose of eliminating uncertainty as to a carrier's liability by injecting uncertainty back into this area of transportation Congress has sought to regulate.

*Id.* at 1415.

The Court finds that the Carmack Amendment limits North American's liabili-

ty to $12,408, the released value of the shipped goods. Accordingly,

IT IS HEREBY ORDERED that North American's motion for summary judgment to limit its liability is granted.