**MCI TELECOMMUNICATIONS CORPORATION, a Delaware Corporation, and MCI Telecommunications Corporation of Virginia, a Virginia Corporation Plaintiffs,**

v.

**COMMONWEALTH OF VIRGINIA STATE CORPORATION COMMISSION; and Hullihen Williams Moore, I. Clinton Miller, and Theodore V. Morrison, Jr. In their official capacities as Commissioners of the Commonwealth of Virginia State Corporation Commission, Defendants.**

Civil Action No. 3:98CV284.

United States District Court, E.D. Virginia, Richmond Division.

June 15, 1998.

---

Albert Peter Brodell, Williams, Mullen, Christian & Dobbins, Richmond, VA, Howard W. Dobbins, Robert Dean Perrow, Williams, Mullen, Christian & Dobbins, Richmond, VA, Donald B. Verrilli, Jr., John B. Morris, Jr., Jenner & Block, Washington, DC, William Single, IV, Thomas F. O'Neil, III, Adam H. Charnes, MCI Telecommunications Corp., Washington, DC, for Plaintiffs.

Robert McMurdo Gillespie, Charles Meade Browder, Jr., State Corporation Commission, Office of General Counsel, Richmond, VA, William Frederick Schutt, State Corporation Commission, Richmond, VA, for Defendants.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on the parties' cross motions for summary judgment. MCI Telecommunications Corporation ("MCIT") and MCI Telecommunications Corporation of Virginia ("MCIV"), MCI collectively, seek injunctive and declaratory relief to block enforcement of the "Order on Rule to Show Cause" issued by the Virginia State Corporation Commission ("SCC"). The SCC has moved for summary judgment in its favor, or alternatively, for dismissal for lack of subject matter jurisdiction or abstention.

*Facts*

The facts in this case are not in dispute. Plaintiff MCIT is a corporation organized under the laws of the state of Delaware. It provides interstate long distance telecommunications services to customers in the Commonwealth of Virginia and in every other state, pursuant to tariffs on file with the Federal Communications Commission ("FCC"). In order for a foreign corporation to act as a public service company in Virginia it must reincorporate. Plaintiff MCIV is a wholly owned subsidiary of MCIT and is organized under the laws of the Commonwealth of Virginia. MCIV provides intrastate long distance telecommunications services to customers in Virginia, pursuant to tariffs on file with the SCC.

The Federal Communications Act of 1934 ("the Act"), 47 U.S.C. § 151 *et seq.*, imposes a comprehensive federal regulatory scheme on rates and charges levied on interstate and international communications. Under the Act, common carriers such as MCI must "file with the [FCC] ... schedules showing all charges ... and showing the classifications, practices, and regulations affecting such charges." 47 U.S.C. § 203(a). Federal law requires MCI to charge its customers the charges set out in the FCC Tariff and specifically forbids any deviation from those charges, including refunding any portion of the charges. 47 U.S.C. § 203(c).

In 1997 and 1998, MCI filed amendments to its FCC Tariff to add two additional charges to be imposed on MCI's interstate customers. Specifically, MCI added the Federal Universal Service Fee ("FUSF"), FCC Tariff § C-1.-612, and the National Access Fee ("NAF"), FCC Tariff § C-1.0613. MCI added these charges to its FCC Tariff in response to certain charges and payment obligations imposed on MCI by FCC regulatory orders issued in 1997. The FCC assesses portions of the universal service charge on MCI in direct proportion of MCI's total revenues, including intrastate, interstate, and international calls. MCI's tariff assesses its interstate customers the FUSF in proportion to its customers' total bills (including intrastate, interstate, and international calls), and until April 1, 1998, it also assessed the NAF for certain small business interstate customers in proportion to their total bills. MCI does not apply these charges to customers who have incurred only intrastate charges.

In February 1998, staff members of the defendants asserted to MCI that MCI's federally tariffed FUSF and NAF improperly imposed intrastate charges on MCI's interstate customers located in Virginia. MCI denied that the tariff was improper. In part as a result of the concerns of the SCC's staff, on April 3, 1998, MCI filed a Petition for a Declaratory Ruling with the FCC asking that the FCC clarify that carriers are not precluded from imposing on interstate customers charges of the type contained in MCI's Tariffed FUSF charge. On April 13, 1998, the staff of the SCC filed an opposition to MCI's Petition before the FCC.

On March 13, 1998, SCC staff filed with the SCC a "Motion for Rule to Show Cause." The motion asserted that MCI's NAF and FUSF charges violated SCC and FCC requirements and asked the SCC to "enter an order directing MCI to show cause, if it can, why it should not be enjoined from continuing to bill customers illegally for its 'Federal Universal Service Fee' and 'National Access Fee' and why it should not be required to refund to customers all amounts collected in excess of its tariffed rates." On April 24, 1998, the SCC granted the staff's motion and issued a "Rule to Show Cause." On May 8, 1998, the SCC issued an "Order on Rule to Show Cause" ("the Order"), forbidding MCI from collecting the FUSF and NAF as set forth in the federal tariff, and requiring MCI to rebate with interest within sixty days all of the charges previously collected.

MCI filed a Motion for Temporary Restraining Order against the SCC, asking that the SCC be enjoined from enforcing its Order. On May 12, 1998, the Court issued a temporary restraining order enjoining the defendants from implementing and enforcing the May 8, 1998 Order. The Court also prohibited MCI from expanding its tariff collection to classes of customers not currently being charged the NAF and FUSF based on total revenue. The matter is now before the Court on cross motions for summary judgment or in the alternative, dismissal of the complaint.

*Analysis*

The gravamen of defendant's argument is that the SCC has exclusive authority over rates and charges for intrastate telecommunications services in Virginia, and that MCI's FUSF and NAF tariffs violate SCC regulations. In its "Motion for Rule to Show Cause," the staff of the SCC set forth reasons for its request. The staff found that the MCI's FUSF and NAF tariffs were in violation not only of the SCC's requirements, but "in contravention to the order of the FCC which required carriers to recover their contributions to said fund from their 'rates for interstate services only.'" Motion at 3–4. In its "Order on Rule to Show Cause" the SCC set forth its reasons for enjoining MCI from billing the FUSF and NAF and order-

ing MCI to refund those tariffed rates. The SCC specifically held:

> ... the FCC's Report and Order clearly, unequivocally and unambiguously requires that carriers must recover their universal service contributions only through their rates for interstate services only. There is no uncertainty as to this point.

> The Commission agrees to some considerable extent with counsel for MCIV that the Telecommunications Act of 1996 and subsequent FCC orders have created a "mess" for carriers. However, MCIV's argument that there is sufficient latitude in the Report and Order to permit it to collect universal service contributions in intrastate rates is wholly without support. Further, MCIV's contention that the filing of a federal tariff by its affiliate, MCI Telecommunications Corporation allows it to make changes to rates for intrastate calling is also without support. Carriers cannot make changes to rates for their intrastate services at the FCC. For that, they must comply with the regulations and orders of this Commission. The law is well settled on this point.

*Order on Rule to Show Cause* at 5.

██ The SCC's own Order is instructive in defendant's motion to dismiss for lack of subject matter jurisdiction and its request that the Court abstain from adjudicating. Defendant argues that the Court lacks jurisdiction to review a determination made by the SCC pursuant to the *Rooker–Feldman* doctrine. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). The doctrine prohibits United States district courts from "sitting in direct review of state court decisions." *Feldman*, 460 U.S. at 483 n. 16, 103 S.Ct. 1303. It does not affect the decision-making authority of the Court in this case. MCI correctly notes that this Circuit, among many others, has held that the *Rooker–Feldman* doctrine does not apply to bar federal district court review of a quasi-judicial decision made by a state administrative agency, unless, as is relevant in this case, the agency is acting as an

agent of a state court. *See Fleming v. Worker's Compensation Comm'n of the Commonwealth of Virginia,* 78 F.3d 578, 1996 WL 93843 at *1 n. 4 (4th Cir. Mar.5, 1996)(unpublished opinion); *Van Harken v. City of Chicago,* 103 F.3d 1346, 1348–9 (7th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 1846, 137 L.Ed.2d 1049 (1997); *Narey v. Dean,* 32 F.3d 1521, 1525 (11th Cir.1994); *Ivy Club v. Edwards,* 943 F.2d 270, 284 (3d Cir.1991) *cert. denied sub nom. Del Tufo v. Ivy Club,* 503 U.S. 914, 112 S.Ct. 1282, 117 L.Ed.2d 507 (1992); *Scott v. Flowers,* 910 F.2d 201, 208 (5th Cir.1990). The decision of the SCC in its "Order to Show Cause" is not an adjudication of a state court or an agency acting as an agent of a state court. Defendants cite *National Home Ins. Co. v. State Corp. Comm'n,* 838 F.Supp. 1104 (E.D.Va.1993) in error for this proposition. They are unable to guide the Court to a single case that supports the proposition that the *Rooker–Feldman* doctrine bars this Court from deciding the merits of plaintiffs' complaint.

█ Likewise the defendants' argument that the Court lacks federal question jurisdiction over this case because it arises solely under Virginia law is without merit. MCI's action arises under the Communications Act of 1934, 47 U.S.C. § 151 *et seq.,* the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, § 2, and 42 U.S.C. § 1983. This Court has jurisdiction under 28 U.S.C. § 1331. *See Shaw v. Delta Air Lines,* 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) ("A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is preempted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question [over] which the federal courts have jurisdiction under 28 U.S.C. § 1331")

█ Defendants further argue that even if the Court has jurisdiction, it should elect not to exercise in accordance with the abstention doctrines of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Under the *Younger* abstention doctrine, federal courts should abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests. *Kim–Stan. Inc. v. Department of Waste Management,* 732 F.Supp. 646, 648 (E.D.Va.1990) The SCC argues that there is an ongoing proceeding in the Virginia judicial system because MCIV has an automatic right of appeal to the Virginia Supreme Court. Va. Code § 12.1–39. For *Younger* purposes, a state's trial-and-appeals process is treated as a unitary system. *New Orleans Pub. Serv. Inc. v. Council of City of New Orleans (NOPSI),* 491 U.S. 350, 369, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989). This is true even during the juncture between state administrative and state court appeal proceedings. *See Phillips v. Virginia Bd. of Medicine,* 749 F.Supp. 715, 729 (E.D.Va.1990).

Nevertheless, the Court need not abstain in this case for the reasons set forth explicitly in *Public Utilities Commission of Ohio, et al., v. United Fuel Gas Co., et al.,* 317 U.S. 456, 63 S.Ct. 369, 87 L.Ed. 396 (1943), in which a state public utility commission asserted jurisdiction to fix the rates charged by United for natural gas. The Court found, however, that Congress through the Natural Gas Act of 1938, preempted the regulatory powers over the transportation and sale of natural gas in interstate commerce. The Court interpreted the legislative history of the Act to establish a dual system of regulation where the Federal Power Commission would exercise jurisdiction over matters in interstate and foreign commerce, and local matters would be left to the state regulatory bodies. *Id.* at 467, 63 S.Ct. 369. The Court found that the District Court did not abuse its discretion in granting relief by way of injunction, and it outlined a similar scenario to that which MCI finds itself as a result of events leading to the case at bar. The SCC's efforts to distinguish *United Fuel* from this case are unpersuasive. The SCC's Order is not "plainly valid" as it asserts. The Order directly addresses the validity of a FCC tariff, a federal question. This is not dispositive as to the merits of the case, but does per-

suade the Court that *Younger* abstention is inappropriate.[1]

■ The defendants also urge the Court to abstain from exercising its jurisdiction pursuant to the *Burford* doctrine. *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). In *Burford*, the Court, quoting *Pennsylvania v. Williams*, 294 U.S. 176, 185, 55 S.Ct. 380, 79 L.Ed. 841 (1935), held it to be "in the public interest that federal courts of equity should exercise their discretionary power with proper regard of the rightful independence of state governments in carrying out their domestic policy." Under *Burford*, federal courts should abstain "(1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.' " *NOPSI* at 361, 109 S.Ct. 2506 (citations omitted). This is not the case here. In the matter before the Court, the SCC has rendered judgment on the applicability and propriety of a federal tariff filed with the FCC. There are no important state law issues implicated. In fact, the question of a "coherent policy" and uniformity is precisely why federal law forbids carriers from deviating from charges set out in a FCC Tariff—a deviation that would be required by MCIT with regard to Virginia if MCI were to comply with the Order of the SCC. Abstention is not appropriate in this case.

Defendants argue that the SCC's Order poses no preemption dispute because the SCC has enjoined MCIV only in collecting the FUSF and NAF charges in intrastate rates, in violation of state laws and rules. They reason that defendants are entitled to summary judgment because the SCC has authority to order MCIV to correct its unlawful practices that are in violation of state and federal law. If MCIT is collecting the

charges in its interstate rates, as opposed to MCIV, the defendants argue that there is no case or controversy and summary judgment for the defendants is appropriate because no action against MCIT has been taken. This argument must fail for several reasons. First, the SCC's Order unambiguously applies to the rates collected under the federally filed tariffs. Second, plaintiffs have put forth two sworn declarations that state unequivocally that MCIV is not collecting the FUSF and NAF charges from its customers. According to the lawyer at MCI responsible for pursuing MCI policies in Virginia regulatory forums, James R. Scheltma, MCIT is collecting all FUSF and NAF charges in Virginia pursuant to sections C–1.0612 and C–1.0613 of MCIT's federal Tariff FCC No.1 on file with the FCC. Third, if in fact the defendants are exceeding the limit of their authority by directing MCI with regard to federally filed tariffs, it may not evade that limitation merely by ordering MCIT's wholly owned subsidiary, MCIV, to refund a federally tariffed rate collected by MCIT.

■ Having established that the SCC's Order requires MCI to stop collecting federally tariffed rates in Virginia and to refund rates previously collected, the legal issue is straightforward. Defendants concede that MCIT[2] is without power to charge more or less than the charges set out in its federal tariff. *See MCI Telecommunications Corp. v. American Tel. & Tel. Co.*, 512 U.S. 218, 230, 114 S.Ct. 2223, 129 L.Ed.2d 182 (1994); *Coliseum Cartage Co. v. Rubbermaid Statesville Inc.*, 975 F.2d 1022, 1023 (4th Cir.1992) ("a carrier must collect in full the published rate"). They do not challenge MCI's argument that the FCC has exclusive jurisdiction to determine the validity of charges set forth in federal tariffs. *See* 47 U.S.C. §§ 204, 208. Nor do they challenge that federal tariffs once filed with the FCC, attain the status of federal law. *See, e.g., Lowden v. Simonds–Shields–Lonsdale Grain Co.*, 306 U.S. 516, 520, 59 S.Ct. 612, 83 L.Ed. 953 (1939).

---

1. The defendants' efforts to distinguish *Appalachian Power Co. v. Public Serv. Co. Of W. Va.*, 812 F.2d 898 (4th Cir.1987) are likewise unsuccessful. In *Appalachian Power,* the court refused to abstain when a state regulatory commission infringed on the rate-making jurisdiction of a federal agency.

2. Defendants refer to MCIT as MCI–D throughout their briefs. The terms are synonymous.

Accordingly, the review and rejection by a state regulatory agency of a federal tariff is in direct conflict with the Communications Act of 1934 and is preempted under the Supremacy Clause of the United States Constitution. The SCC's action is preempted both because compliance with it and federal law is impossible and because it stands as an obstacle to the accomplishment of a uniform regulatory scheme intended by Congress through federal communications law. *See Louisiana Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 368–69, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986); *Cox v. Shalala,* 112 F.3d 151, 154 (4th Cir.1997). The SCC's Order requires MCI to charge interstate customers a rate different from its federal tariff. This it cannot due, creating an "outright or actual conflict between federal and state law." *Louisiana PSC,* 476 U.S. at 368, 106 S.Ct. 1890. Compliance with both the federal tariff and the SCC's Order would be a "physical impossibility." *Boggs v. Boggs,* 520 U.S. 833, ——, 117 S.Ct. 1754, 1762, 138 L.Ed.2d 45 (1997); See Cox, 112 F.3d at 154 (finding conflict preemption where compliance with North Carolina statute and federal Medicare provisions would be a physical impossibility).

The defendants argue at length that MCI's calculation of FUSF and NAF fees, based in part on intrastate usage by interstate customers, is in contravention to the FCC's clearly stated rule. They refer the court to the FCC's Report and Order where the FCC specifically declines to exercise the full extent of its authority with regard to universal service rates. Report & Order ¶ 807. The FCC further stated that it decided to continue to assess carriers contributions based only upon the carriers' interstate revenues. *Id.* at ¶ 808. The FCC concluded that it was in the public interest for state governments to assess and provide recovery for the intrastate share of the necessary contributions, not the federal government. *Id.* at ¶ 826.

The SCC's analysis of the FCC's Report and Order notwithstanding, this Court is not the appropriate forum for reviewing federal tariffs. More importantly for purposes of this case, the SCC is not the appropriate forum for such a review. It is the role of the FCC and the appropriate appellate court to determine the viability of filed tariffs. Under Section 204 of the Communications Act, 47 U.S.C. § 204, the FCC, either upon complaint or on its own initiative, may commence a proceeding to determine the lawfulness of any new or revised tariff and may suspend the effectiveness of a tariff pending the investigation. An order determining the lawfulness of a tariff pursuant to Section 204 is reviewable in the federal Courts of Appeals pursuant to Section 402. 47 U.S.C. §§ 204(a)(2)(C); 402.

Section 208 of the Communications Act allows "any person" to complain to the FCC about "anything done or omitted to be done by any common carrier subject to" the tariffing requirements of the Communications Act. 47 U.S.C. § 208(a). The SCC can challenge MCI's FCC Tariff through a § 208 complaint in front of the FCC. What it may not do is challenge the FCC tariff, indeed rule on it, in a SCC proceeding. *See Maine Pub. Advocate v. FCC,* 828 F.2d 68, 69 (1st Cir.1987); *Direct Marketing Ass'n, Inc. v. FCC,* 772 F.2d 966, 969 (D.C.Cir.1985).

*Conclusion*

The SCC's Order invades the FCC's exclusive authority over the filing and review of federal tariffs and requires MCI to violate federal law. The Court finds that the May 8, 1998 Order of the SCC is preempted under the Supremacy Clause of the United States Constitution, U.S. Const. Art. VI, cl. 2, by the Communications Act, 47 U.S.C. § 151 *et seq.* Accordingly, the Court grants plaintiffs' motion for summary judgment, denies defendants' motion, and permanently enjoins the defendants from implementing and enforcing their May 8, 1998 Order against MCI.

### *ORDER*

This matter is before the Court on the parties' cross motions for summary judgment. For the reasons stated in the Memorandum Opinion, the plaintiffs' motion is GRANTED and the defendants' motion is DENIED. Defendants are permanently enjoined from implementing and enforcing

their May 8, 1998 "Order on Rule to Show Cause" against the plaintiffs.

It is so ORDERED